BIGGS *v.* STATE OF INDIANA.

[No. 24,417.   Filed June 25, 1929.]

*William J. Reed,* for appellant.

*U. S. Lesh,* Attorney-General, *Mrs. Edward Franklin White,* Deputy Attorney-General, and *O. S. Boling,* for the State.

MYERS, J.—Appellant, in the court below, by affidavit, was charged with feloniously stealing "three bushels of white field corn" of the value of $2.40. §2452 Burns 1926; Acts 1905 p. 584, §378, as amended, Acts 1907 p. 86. He was tried before a jury, convicted and sentenced by the court to imprisonment in the State Prison for a period of from one to eight years, fined $1 and disfranchised for one year. From that judgment he appealed, and in this court has assigned as errors the action of the Starke Circuit Court in overruling his motion to require the sheriff of that county to return to him his

shoes taken from him by force, and to suppress their use as evidence at the trial, and in overruling his motion for a new trial. The ruling on the motion to suppress the evidence is also assigned as one of the causes for a new trial. Evidence was heard in support of the motion, and from a special bill of exceptions we learn that on June 2, 1923, appellant was arrested and lodged in the Starke County jail. Thereupon a search of the person of the accused was made by the sheriff, who requested appellant to take off his shoes, which he did, but replaced them on his feet contrary to the sheriff's demand that they be delivered to him. The sheriff then threatened to blackjack appellant, but when this threat failed of its purpose, the sheriff called to his assistance four other men, three of whom, including the sheriff, held the accused while the other two removed his shoes. The motion for the return of the shoes and to suppress was overruled, and, over appellant's objections, they were introduced in evidence at the trial.

This being a criminal case, appellant makes the point that, under the circumstances narrated, the search of his person and the seizure of his shoes were unreasonable, and, by their admission in evidence, he was compelled to be a witness against himself in violation of his constitutional guaranteed rights under the Fourth and Fifth Amendments of our federal Constitution, and Art. 1, §§11 and 14, Constitution of Indiana.

(1) Looking to the foregoing amendments, it must be kept in mind that the first 10, including the fourth and fifth, are not concerned with state action (*Minn. & St. Louis R. R. Co.* v. *Bombolis* [1916], 241 U. S. 211, 217, 36 Sup. Ct. 595, 60 L. Ed. 961, Ann. Cas. 1916E 505, L. R. A. 1917A 86), and since the question we are called upon to answer involves the acts of a local officer alone, the Fourth and Fifth Amend-

ments are not applicable to the facts of this case, and no further attention need be given them.

(2) As to the state constitutional inhibitions, appellee is relying upon a statement of the sheriff at the trial to the effect that appellant voluntarily surrendered his shoes. This testimony is so extravagantly out of line with other statements of the witness, and the testimony of all the other witnesses who assisted him in the shoe-removal incident, that there is no escape from the conclusion that appellant's shoes were taken from him by force. But even if it be conceded that appellant, on demand of the officer, surrendered his shoes to him, such action on the part of appellant would not amount to a waiver of his constitutional protection. *Meno* v. *State* (1925), 197 Ind. 16, 164 N. E. 93. He had, however, been lawfully arrested and was in the Starke County jail at the time his shoes were forcibly taken from him at the command of the sheriff.

Tracks made by persons near the Ream corn crib, from which, in the opinion of witnesses, corn had been taken, had a distinctive appearance and corresponded with the peculiar features of the shoe tracks made by appellant in the presence of those engaged in locating the thief. Under these circumstances and the fact that appellant had been arrested, we have no hesitancy in holding that the sheriff was justified in searching the person of appellant without a search warrant. Such action on the part of the officer in charge of the prisoner must be allowed, not only as a precaution against the presence of weapons or instruments of escape, but also for any articles which would tend to connect the accused with the crime alleged to have been committed. *Haverstick* v. *State* (1925), 196 Ind. 145, 147 N. E. 625; *Thornton* v. *State* (1903), 117 Wis. 338, 93 N. W. 1107, 98 Am. St. 924; *Myers* v. *State* (1894), 97 Ga. 76,

25 S. E. 252; *State* v. *Graham* (1876), 74 N. C. 646, 21 Am. Rep. 493.

In the instant case the shoes in question were in plain view of the sheriff, who was advised as to the similarity of the tracks made by them and the ones made near the Ream crib. An article obviously in sight excludes the thought of a search for it. Hence we conclude that no search warrant was necessary for authority of the sheriff to search the person of the prisoner.

Now, as to the claim that appellant was "compelled to testify against himself." If appellant had been compelled to do or say anything out of court that might tend to connect him with the crime, there would be room for the insistence that he was compelled to testify against himself and a basis for the asserted violation of our state Constitution. *Cooper* v. *State* (1888), 86 Ala. 610, 6 So. 110, 4 L. R. A. 766, 11 Am. St. 84. In the instant case, it was the shoes and not the accused that testified. It was the distinguishable feature of the heels of the shoes, especially the heel of the right shoe, observable by inspection, that gave evidence connecting the wearer with having made the tracks at or near the crib from which the corn was alleged to have been stolen. Beyond question, it was the shoes alone that could be considered as furnishing the link in the chain of circumstances connecting appellant with the larceny. The shoes were admissible in evidence and the value or weight to be given it was first for the jury in determining the facts, and second for the court in ruling on the motion for a new trial, when one of the causes assigned was insufficient evidence.

(3) Appellant insists that the court erred in giving of its own motion instruction No. 4, which told the jury that "if the state has proved that the corn described in the affidavit was stolen, and that such corn was, immediately after the larceny, found in the exclusive posses-

sion of the defendant, then the law imposes upon him the burden of accounting for his possession and showing that such possession was innocently acquired, and that if he fails to do so or gives a false account of his possession, the presumption arises that he is the thief."

It is true, as claimed by appellant, there was no evidence before the jury justifying this instruction. Corn alone was the subject of the present alleged larceny and none was found on the premises occupied by appellant. It affirmatively appears without contradiction that the alleged stolen corn was discovered a half mile distant from the home of the accused in the crib of his brother Abe Biggs. The corn in this case—three or four bushels taken from a crib of about 400 bushels—was described by the witnesses as "large white corn," which variety Ream brothers and Abe Biggs had grown from seed obtained from the same neighbor farmer. Abe Biggs cultivated a farm of about 160 acres owned by himself and his two brothers, Joseph and Henry Biggs. Appellant had no interest in the farm or the farming equipment or live stock thereon. During the crop season he worked for his brother as a farm hand, and the rest of the year he was employed at Gary, Indiana. In the crib from which the sheriff of Starke County, by virtue of a search warrant, seized three or four bushels of corn, was other corn—the amount was not stated—and there was some conflict in the evidence as to the kind and quality of the other corn. There was a statement by one witness that the accused said to him that he and his brother Abe were partners in the crops that year.

With the foregoing evidence in mind, we return to the challenged instruction, which placed upon appellant, as a matter of law, the burden of accounting for his possession of the corn. In the first place, this being a criminal action, the law cast no burden upon appellant. Exclusive possession of a recently

stolen article raises an inference of fact and not one of law. Possession and want of explanation showing innocent acquisition is evidence which the jury is authorized to consider as tending to show guilt. The larceny being shown, the circumstances connected with such possession and want of explanation may be sufficient to make the question of guilt one of fact conclusive and sufficient to justify a conviction. *Blaker* v. *State* (1892), 130 Ind. 203, 205, 29 N. E. 1077.

From the fact that the court gave this instruction, the jury might reasonably assume that the court had in mind evidence in the case to which the instruction was applicable. Acting under such impression, the jury would recall that the accused was assisting his brother in farm work at the time of the alleged theft; that he had access to the crib containing the alleged stolen corn and corn admittedly belonging to his brother Abe; that he possibly had an interest in the oncoming crops for that season, and, upon this evidence, erroneously conclude that it was sufficient in law to charge appellant with possession of the corn and impose upon him the duty of accounting for its lawful possession or be regarded the thief. Or, viewing the case from another angle, by assuming that the jury found that corn was in fact stolen from Ream brothers and that the accused was a party to the theft, then, as a natural sequence, the jury might have inferred that the instruction had reference to the possession of the corn at the time it was stolen. The instruction gave the jury a wrong impression when applied to the evidence in this case, and was clearly erroneous.

Inasmuch as the judgment must be reversed for the error in giving instruction No. 4, it will be unnecessary for us to consider the other causes—verdict contrary to law and not sustained by sufficient evidence—in support of the motion for a new trial.

Judgment reversed, with instructions to the trial court to grant appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.