Larry D. JOHNSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 882 S 288.

Supreme Court of Indiana.

Feb. 25, 1983.

Leeney & Uzis, Hammond, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of Rape, a Class A felony, and Robbery, a Class C felony. He was sentenced to two terms of imprisonment, fifty (50) years and five (5) years respectively. The sentences were ordered to be served concurrently.

The record reveals the victim, D.F., was being escorted home by her boyfriend, Michael, when a car stopped and the two occupants asked for directions. The bearded passenger, later identified as appellant, approached the victim's boyfriend. The clean-shaven driver, later identified as co-defendant Willie King, approached D.F. Appellant held a revolver and his co-defendant, a knife. The assailants relieved Michael of his wallet and D.F. of her purse. Michael was ordered to leave after the robbery and was hit by appellant's closed fist. D.F. was forced into the car. After memorizing the car's license plate number, Michael ran home and notified the police. Meanwhile, D.F. was forced to remove her clothes. Appellant threatened her with death if she did not cooperate. Appellant's co-defendant King, forced D.F. to submit to intercourse and commit fellatio. Appellant forced D.F. to engage in intercourse. D.F. testified she had been hit in the face and felt what she believed to be a gun held to her head. Following the sexual offenses, appellant dragged D.F. by the hair down an alley. Co-defendant King fled in his car. As appellant and D.F. approached a gas station, D.F. escaped and ran to a car. Co-defendant King was apprehended in his vehicle in close proximity. Appellant was identified by the victims from a photographic display.

Appellant claims the trial court erred in denying his motion for severance. He argues that had he been tried separately, King would have provided exculpatory evidence. Appellant supports his argument with *United States v. Echeles,* (7th Cir. 1965) 352 F.2d 892, *United States v. Shuford,* (4th Cir.1971) 454 F.2d 772 and *United States v. Martinez,* (5th Cir.1973) 486 F.2d 15.

In *Echeles, supra,* the appellant moved for separate trial which the trial court denied. On appeal he claimed, *inter alia,* that a joint trial would deprive him of his right to call his co-defendant, Arrington, as a witness.

The United States Court of Appeals, 7th Circuit, held "merely that, having knowledge of Arrington's record testimony protesting Echeles' innocence, and considering the obvious importance of such testimony to Echeles, it was error to deny the motion for a separate trial. It should have been clear at the outset that a fair trial for Echeles necessitated providing him the *opportunity* of getting the Arrington evidence before the jury, regardless of how we might regard the credibility of that witness or the weight of his testimony." *Echeles, supra,* at 898.

Similarly, the appellant in *Shuford, supra,* moved for severance, both before trial and at the close of the State's case, so that he could have the benefit of the testimony of his co-defendant Jordan. Jordan, employed as a legal investigator in Shuford's office, would have allegedly testified contrary to the indictment and other testimony. Thus, the evidence was in sharp dispute. Jordan refused to take the witness stand if he and Shuford were tried together. The 4th Circuit Court of Appeals stated at 777, 779:

"In a situation where the elusive quality of credibility is of such importance, the jury should have the benefit of all relevant testimony likely to shed light on the situation. We think that the denial of the severance, resulting in withholding this witness' testimony on such a critical point, so tipped the scales against Shu-ford that he failed to receive a fair trial. A verdict based so heavily on less than the full available testimony, where the missing testimony could, with ease, have been procured, should not stand.

\*   \*   \*   \*   \*   \*

"We reach this conclusion, aware of the vital importance of Jordan's testimony to Shuford's defense, and in light of the substantial expectation that Jordan, if severance were granted, would indeed testify as indicated. We emphasize that our approach in this case does not mandate a severance in every situation where one defendant desires the testimony of another. We hold only, on the specific facts of this case, that Jordan's testimony took on unusual importance for Shuford's defense; that this testimony could become available only by severance; and that in these circumstances it was reversible error to deny Shuford's motion."

The 5th Circuit Court of Appeals had occasion to address this issue in *Martinez.* In that case appellant Huila claimed the exculpatory testimony of his co-defendant, Martinez, was made unavailable when the trial court denied Martinez' tender of a guilty plea and Huila's motion for severance. Counsel for the appellants stated during trial that Martinez would exculpate Huila from any involvement in the transaction only if severance were granted.

The Court set forth the following criteria to determine whether depriving a defendant of the opportunity to use a co-defendant's exculpatory testimony amounts to prejudice resulting in the denial of a fair trial.

"(i) the movant should 'show that the testimony would be exculpatory in effect'; we cautioned that such a showing would not require the equivalent of a statement under oath by the co-defendant whose testimony was sought, op. cit. at 1020; *Smith v. United States,* supra [5th Cir.1967, 385 F.2d 34], at 38; (ii) the movant should show to the court's satisfaction that the co-defendant will in fact testify; in this respect we cautioned that 'the inquiry is not as to certainty whether

the co-defendant will or will not testify but the likelihood;' op. cit. at 1022; *Smith,* supra, at 38; and (iii) we indicated that the trial judge might properly consider the exculpatory nature and the significance of the desired testimony to the movant's defense, which 'might be restated in terms of the extent of potential prejudice to the defendant if the defendant is tried without the opportunity to elicit the co-defendant's testimony,' op. cit. at 1020; *United States v. Echeles,* 7 Cir.1965, 352 F.2d 892, 897–898. *Martinez, supra,* at 22.

The Circuit Court vacated the conviction and ordered a new trial in which appellant Huila would be able to call Martinez as a defense witness.

█ In the case at bar, appellant sought to introduce an oral statement made by his co-defendant King after his arrest. He allegedly stated that a man named Roger had been with him during the evening the offense was committed. However, he later made a statement to his brother, which was overheard by the police, that appellant was with him that night. Outside the presence of the jury, co-defendant King was called to the witness stand. He responded to preliminary questions but invoked his Fifth Amendment right when asked where and with whom he was on the night of the offense. He refused to answer any other questions.

In applying the criteria in *Martinez,* we conclude the trial court did not err in denying appellant's motion for severance. Any exculpatory effect of King's oral statement is *de minimis* in light of his later statement admitting appellant was in his company on the night of the offenses. In the three cited cases, the co-defendants' testimony was completely exculpatory and contradicted the State's evidence.

In *Echeles, Shuford,* and *Martinez,* defense counsel stated the co-defendants would testify on behalf of the appellants if their respective motions for severance were granted. In the case at bar, appellant made no representation that his co-defendant might possibly testify at a separate trial. His co-defendant refused to testify at a hearing outside the presence of the jury. He did not indicate his willingness to testify on appellant's behalf at a separate trial.

Considering the nature and significance of the desired testimony, we conclude appellant suffered no potential prejudice.

█ Although appellant next challenges the sufficiency of the evidence identifying him as the perpetrator of the offenses, the identification testimony of the victims was unequivocal.

Appellant argues the identification testimony of the victims was insufficient because they failed to describe his facial scar. Looking only to the evidence most favorable to the State, and all reasonable inferences drawn therefrom, we note both D.F. and Michael identified appellant from a photographic display consisting of twenty (20) individuals. Michael testified appellant stood close to him. The area was illuminated by a street light. He stated he saw appellant's face. D.F. saw appellant's face while they were in the back seat of the car and he was kissing her. Both victims made positive in-court identifications.

In *Tillman v. State,* (1980) Ind., 408 N.E.2d 1250, the appellant challenged the victim's and her neighbor's testimony because neither recalled a scar on appellant's chin. We noted his argument was an invitation to reweigh the evidence and judge the credibility of the witnesses, which we refused to do. We concluded in *Tillman, supra,* as we do in the case at bar, the evidence was sufficient to identify appellant as the perpetrator of the offense notwithstanding the witnesses' failure to remember a facial scar.

The trial court is in all things affirmed.

All Justices concur.